IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA            PLAINTIFF/RESPONDENT

v.        Criminal No. 5:17-cr-50017-001

HJESTIE OLITTA SOMMER            DEFENDANT/MOVANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the *pro* se Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 28) filed by Defendant/Movant Hjestie Sommer ("Sommer"). The United States ("Government") has filed a Response (ECF No. 36). The matter is before the undersigned for issuance of this report and recommendation.

An evidentiary hearing is not warranted in this matter, as the § 2255 motion, the files, and the records in this case conclusively show that Sommer is not entitled to relief. *See* 28 U.S.C. § 2255(b); *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)("No hearing is required when the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which they are based").

### I. BACKGROUND

On March 1, 2017, Sommer was charged in a Three Count Indictment with conspiracy to distribute methamphetamine, aiding and abetting the distribution of methamphetamine, and the distribution of methamphetamine. (ECF No. 1). The Indictment does not contain any drug quantities. On March 28, 2017, Sommer was arraigned, pled not guilty to each count, and

1

Assistant Federal Public Defender Jose Alfaro was appointed to represent her.  (ECF No. 8).

On May 8, 2017, a change of plea hearing was held before the Honorable Timothy L. Brooks, United States District Judge (ECF No. 13).  Pursuant to a written Plea Agreement (ECF No. 14), Sommer pled guilty to Count Three, the distribution of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a).  The Plea Agreement states that if accepted by the Court, once the Court pronounced sentence, the Government would move to dismiss the remaining counts of the indictment.  (ECF No. 14 at 1).

The factual basis for the plea as set forth in the Plea Agreement is that on or about August 29, 2016, a confidential source ("CS") purchased approximately 7 grams of methamphetamine from Sommer for $350.  (ECF No. 14 at 3).  The Arkansas State Crime Laboratory confirmed that the substance recovered was 7.1965 grams of a mixture or substance containing methamphetamine.  *Id.*  The Plea Agreement also set forth the maximum penalties as being a maximum of twenty years imprisonment, a maximum fine of 1,000,000, a special assessment of $100, and a term of supervised release of not less than three years nor more than life.  *Id.* at 6.

An Initial Presentence Investigation Report ("PSIR")(ECF No. 15) was submitted on July 3, 2017. [1]  The PSIR contains further factual detail regarding the offense conduct.  It indicates that on August 17, 2016, a CS purchased methamphetamine from Sommer.  *Id.* at 4-5.  The substance was confirmed to be 10.7 grams of a mixture of methamphetamine.  *Id.* at 5.  The purity level was not tested.  *Id.*  Next, was the purchase of 7.1965 grams on August 29, 2016, comprising the factual basis for the plea to Count Three.  *Id.*  The purity level was not tested.  *Id.*

---

[1] The 2016 United States Sentencing Guidelines Manual was used.  (ECF No. 15 at 7).

2

Shortly after the two controlled buys, investigators then contacted Sommer and she agreed to provide them with information regarding drug trafficking operations in Northwest Arkansas and was not arrested. (ECF No. 15 at 5). Over several weeks while Sommer appeared to be cooperating, the investigators learned she was still acquiring and selling methamphetamine. *Id.* at 5-6.

On November 14, 2016, investigators arrested Sommer. (ECF No. 15 at 6). She had on her person approximately 133 grams of suspected methamphetamine and a drug ledger containing names and common drug weights and prices. *Id.* The Crime Lab confirmed the substance as 129.6 grams of a mixture of methamphetamine or 121.95 grams of actual methamphetamine as the substance was 94.1 percent pure. *Id.* The guidelines offense level was calculated using only the actual amount of methamphetamine. *Id.* U.S.S.G. § 2D1.1. It was concluded Sommer was accountable for 121.95 grams of actual methamphetamine. *Id.* The base offense level was 30 which was decreased by 3 for acceptance of responsibility. U.S.S.G. §§ 2D1.1, 3E1.1(a) & (b). Her total criminal history score was 9 placing her in a criminal history category of IV. (ECF No. 15 at 18). The guideline imprisonment range was 100 to 125 months. *Id.* at 25. The probation officer noted that Sommer had an undischarged term of imprisonment in Washington County, Arkansas, Circuit Court, Docket No. 2010-1523. *Id.* It was noted the sentence for the instant offense could be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense. *Id.* (*citing* U.S.S.G. § 5G1.3(d)).

Objections to the Initial PSIR were made on Sommer's behalf. (ECF No. 17). The objections raised were largely resolved by revisions to the PSIR. (ECF No. 18). Objection was

3

made to the calculation of the actual methamphetamine drug quantity as it should have been 119.41 grams rather than 121.95 as the substance was 94.1% pure. (ECF No. 18-1 at 1). The drug quantity was corrected in the Final PSIR. (ECF No. 18). However, it did not alter the guideline range. *Id.* No other objection was made to the quantity of drug attributable to Sommer, its purity, or the use of the weight of the actual methamphetamine to determine the guideline range. (ECF No. 17).

On September 13, 2017, Sommer appeared for sentencing. As noted above, Sommer received a three level downward adjust for acceptance of responsibility resulting in a total offense level of 27. The Government moved for a downward departure pursuant to § 5K1.1 for substantial assistance. (ECF No. 34 at 9-10). A three-level departure was found to be warranted. *Id.* at 11. This reduced the guideline offense level to 24. *Id.* The guideline range for imprisonment was 77 to 96 months. *Id.* Sommer's counsel argued for a low-end guideline sentence of 77 months and Sommer addressed the Court *Id.* at 14 & 19. After consideration of all other factors, the Court concluded that a sentence of 77 months of imprisonment, 3 years of supervised release, a fine of $1,900, and a special assessment of $100, was fair and just. *Id.* at 29-34. No objection was made at sentencing about the use of the weight of actual methamphetamine. *Id.* There was no discussion of whether the sentence should run concurrently or consecutively with the prior undischarged state sentence. *Id.*

Judgment was entered on September 14, 2017. (ECF No. 26). Sommer did not file a direct appeal. On September 13, 2018, Sommer filed this § 2255 habeas petition. (ECF No. 28).

## II. DISCUSSION

As grounds for relief, Sommer asserts two ineffective assistance of counsel claims. First,

she contends her counsel was ineffective for not objecting when she was charged with the "actual methamphetamine" weight rather than the weight of the "mixture of methamphetamine." Second, she contends her counsel was ineffective in failing to ensure that her state time would run concurrently with her federal time under § 5G1.3.

Section 2255(a) provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

However, "[s]ection 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993). The Eighth Circuit has clearly stated that "we will not hear ineffective assistance claims on direct appeal unless the record is fully developed and our failure to act would be a plain miscarriage of justice or the counsel's errors are readily apparent." *United States v. Rodriguez-Ramos*, 663 F.3d 356, 365 (8th Cir. 2011)(internal quotation marks and citation omitted); *see also Massaro v. United States,* 538 U.S. 500 (2003)(procedural default doctrine does not bar ineffective assistance of counsel claims). Likewise, Sommer's guilty plea does not foreclose these ineffective assistance of counsel claims as the claims deal with events occurring at the sentencing rather than any aspect of the plea agreement.

The Court will therefore address Sommer's claims, after reviewing the ineffective assistance of counsel standard.

### A.  INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the standard to be applied to ineffective assistance of counsel claims. To prevail on her ineffective assistance of counsel claims, Sommer must prove, by a preponderance of the evidence, two related but independent issues. First, Sommer must show that counsel's performance was so deficient so as to not constitute "counsel" as guaranteed the defendant by the Sixth Amendment. *Id.* at 687. Second, Sommer must establish that counsel's deficient performance materially and adversely prejudiced the outcome of the case. *Furnish v. United States of America*, 252 F.3d 950, 951 (8th Cir. 2001).

With respect to the first prong, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The Supreme Court instructed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689. A reviewing court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

With respect to the second prong, to prove an error was prejudicial Sommer must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693.

The Eighth Circuit has set forth the two-prong *Strickland* test as follows: "[w]hether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

### B. GROUND ONE—ACTUAL VERSUS A MIXTURE

Sommer argues her counsel was ineffective when he did not object to her being charged based on the quantity of actual methamphetamine rather than on the quantity of a mixture of methamphetamine. (ECF No. 28 at 4). She points out there is case law that holds there is no longer any empirical basis for the guidelines' focus on purity to support a 10:1 ratio for actual or ice methamphetamine versus a mixture of methamphetamine. In her view, the cases show that the purity of the drug is not probative of the defendant's role or position in the distribution chain. *Id.* at 13. She relies primarily on two Northern District of Iowa cases *United States v. Harry*, 313 F. Supp. 3d 969, 970 (N.D. Iowa 2018) and *United States v. Nawanna*, 321 F. Supp. 3d 943 (N.D. Iowa 2018). Sommer requests the Court to reduce her sentence to a mixture of methamphetamine

7

to the point she should look less culpable. *Id.* at 14.

The Government argues Sommer's claim lacks merit. The Government contends Sommer is making a policy argument as to the disparate treatment under the guidelines between a mixture and actual methamphetamine. (ECF No. 36 at 4-5). The Government contends the base offense level was properly set under § 2D1.1. The Government maintains Sommer's counsel was not ineffective for failing to raise an objection which would require a downward variance that was without precedence in the Eighth Circuit. It also points out that the *Harry* and *Nawanna* cases referred to by Sommer, were both decided well after Sommer's sentencing in September of 2017.

Section 2D1.1 is the guideline provision applicable to offenses involving drugs. U.S.S.G. § 2D1.1. The term "ice" is defined as "a mixture or substance containing d-methamphetamine hydrochloride of a least 80% purity." U.S.S.G. § 2D1.1, n.(c)(Drug Quantity Table). Sommer was in possession of 129.6 grams of a mixture of methamphetamine with 94% purity resulting in her being responsible for 119.41 grams of actual or "ice" methamphetamine.

Sommer's Final PSIR was prepared in July of 2017. Sommer appeared for sentencing on September 13, 2017. Judgment was entered the following day. *Nawanna* was not decided until May of 2018. *Harry* was not decided until June of 2018.

This exact argument was presented to United States Magistrate Judge Mark Ford in the case of *United States v. Burke*, Cr. No. 5:16-cr-50014, 2018 WL 7051047 (W.D. Ark. Dec. 28, 2018), report and recommendation adopted, 2019 WL 1307742 (W.D. Ark. March 22, 2019). Magistrate Ford concluded that "Burke's counsel cannot be faulted for failing to anticipate a rule of law that had yet to be articulated or for failing to raise a novel argument based on unsettled legal questions." *Id.* at *8. Moreover, it was noted that at least one district court found that the

"analysis in *Nawanna* does not equate to a finding that 21 U.S.C. § 841 is unconstitutional." *Id.* (*citing United States v. Wilkerson*, Cr. No. 2:16-00218, 2018 WL 3715744,*3 (S.D.W. Va. Aug. 3, 2018)). The *Wilkerson* court further noted that although the Fourth Circuit had not addressed the 10:1 ratio it had affirmed the constitutionality of 21 U.S.C. § 841. Magistrate Ford indicated the same situation existed in the Eighth Circuit. He concluded that "[g]iven the unsettled nature of the legal question involved, the lack of circuit court guidance on the issue, and that the district court decisions Burke relies on post-date her sentencing by nearly a year, Burke's counsel cannot be found to have provided constitutionally deficient performance for failing to object to use of the actual methamphetamine guideline in the instant case." *Burke*, 2018 WL 7051047, *9.

As of this date, Sommer could cite the Court to even more district courts that have declared "a categorical policy disagreement with the 'purity-driven' methamphetamine sentencing guidelines." *United States v. Bean*, 371 F. Supp. 3d 46, 48 (D.N.H. 2019)(collecting cases). While the cases recognize that the district courts have the authority to disagree with the guidelines on policy reasons, they are not required to do so. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007)(District court "may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines"). The district court also has the authority to reject the policy arguments and follow the Guideline range, even when a sentence disparity between co-defendants resulted. *See United States v. Johnson*, No. 19-5534, 2020 WL 2211741 (6th Cir. May 7, 2020). In *Johnson,* the district judge sentenced one co-defendant, Amanda Hampton, based on an alleged 85 grams of methamphetamine mixture with a base offense level of 24 before the results of the drug purity test were received. *Id.* at *1-2. The lab results showed the mixture contained 67.71 grams of actual methamphetamine which raised co-defendant Dustin Johnson's base offense

9

level from 24 to 30. *Id.* at *1. On review, the Sixth Circuit found "[i]t was not error, and therefore not an abuse of discretion, to determine Johnson's base offense level by the weight of the 'actual' methamphetamine contained in the mixture that he admitted having possessed with the requisite intent." *Id.* at *3.

Similarly, in *United States v. Heim*, 941 F.3d 338 (8th Cir. 2019), the Eighth Circuit upheld the district court's refusal to vary downward on Kevin Heim's base offense level because his offense level would have been less if the drug quantity was treated as a methamphetamine mixture and not actual methamphetamine. *Id.* at 339. Although recognizing he had the authority to do so, the district judge rejected the request noting he had never sentenced in that fashion; there was a rational basis for treating distribution of actual methamphetamine as a more serious offense; and the sentencing practices of another district were not a reference point for other courts. *Id.* at 340. The Eighth Circuit noted that numerous defendants have argued on appeal that a district court erred when it refused to vary from a guideline provision for policy reasons. *Id.* The Eighth Circuit stated that "[w]e have consistently held that, while a district court may choose to deviate from the guidelines because of a policy disagreement, it is not required to do so." *Id.* (internal quotation marks and citations omitted). Similarly, the Court stated: "we have likewise consistently rejected a variation on this theme—that the district court created unwarranted disparities, contrary to 18 U.S.C. § 3553(a)(6), when it refused to vary from a guidelines provision that other district judges disagree with as a matter of sentencing policy."

In September of 2017, it would have been futile to raise this policy issue. Sommer has pointed to no district court where the issue had been raised and/or adopted prior to her sentencing. Here, Sommer's claim is that her counsel failed to anticipate and raise a novel argument not

10

previously raised in any court. *Engle v. Isaac*, 456 U.S. 107, 134 (1982)("We have long recognized, however, that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim"). This fails to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Sommer cannot show that her counsel was constitutionally deficient. Sommer's arguments are without merit.

### C. GROUND TWO—FAILURE TO REQUEST CONCURRENT SENTENCE

Sommer maintains her counsel was ineffective for failing to request that her state time run concurrent with her federal time under U.S.S.G. § 5.G1.3. (ECF No. 28 at 5). Sommer asserts that on March 7, 2017, she was found guilty of a state parole violation and sentenced to a term of imprisonment by the State of Arkansas. *Id.* at 15. She was initially sentenced in the state case on February 11, 2011. (ECF No. 18 at 14). Her offense conduct in this case occurred between August 17, 2016, and November 14, 2016. (ECF No. 1). Sommer argues concurrent sentencing avoids the possibility of duplicative punishment for the same or overlapping relevant conduct. (ECF No. 28 at 15). Sommer indicates she "is missing jail time credit under 5G1.3 from March 7, 2017 to September 13, 2017 and is entitled to that time and it should be ran concurrent under 5G1.3." *Id.*

According to the Final PSIR (ECF No. 18 at 14), on March 14, 2017, Sommer's parole was revoked and she was sentenced to six months of imprisonment in the Arkansas Department of Correction. The original charge was delivery of methamphetamine, Docket No.: 2010-1523, Washington County Circuit Court. *Id.* On March 9, 2017, a writ of habeas corpus ad

prosequendum was issued for Sommer to appear for arraignment on March 28, 2017, in this case. (ECF No. 5). The Final PSIR at paragraph 128 noted that Sommer had:

> an undischarged term of imprisonment in Washington County, Arkansas, Circuit Court, Docket No.: 2010-1523. In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense. USSG § 5G1.3(d).

(ECF No. 18 at 25). No mention was made at sentencing regarding whether a concurrent or consecutive sentence should be imposed. (ECF No. 34).

Sommer appears to be intermingling two unrelated issues. Her request for jail time credit from March to September of 2017, is an issue that lies with the Bureau of Prisons who has the "responsibility for computing a sentencing credit pursuant to 18 U.S.C. § 3585(b)." *United States v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006). The computation is done after a defendant has begun serving her sentence. 18 U.S.C. § 3585(b). "Prisoners are entitled to an administrative review of the computation of their credits, 28 C.F.R. §§ 542.10-542.16, and after properly exhausting these administrative remedies, an inmate may seek judicial review through filing a habeas petition under 28 U.S.C. § 2241" directed to the United States District Court wherein the petitioner is incarcerated, and naming the warden of the federal facility as a respondent. *Tindall*, 455 F.3d at 888; *United States v. Zarates*, Cr. No. 2:09-cr-20026, 2011 WL 2600617, *4 (W.D. Ark. May 25, 2011). This § 2255 petition is not a proper avenue to resolve a dispute about jail time credit.

The second issue Sommer raises is the failure of her counsel to move to have her federal sentence run concurrently with her state parole revocation sentence. It is undisputed that counsel did not raise this issue. The application notes to § 5G1.3(d) specifically speak to the issue of when the undischarged term of imprisonment results from revocation of probation, parole, or

12

supervised release. Specifically, application note 4(C) provides:

> Subsection (d) applies in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole, or supervised release revoked. Consistent with the policy set forth in Application Note 4 and subsection (f) of § 7B1.3 (Revocation of Probation or Supervised Release), **the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation.**

U.S.S.G. § 5G1.3 n. 4(C)(emphasis added).

We note that this is not a case where Sommer had a long undischarged sentence of imprisonment. Her parole revocation sentence was only six months and she had served at least some portion of it prior to her initial appearance on the federal charges. In this case, counsel would have been required to argue that the Court disregard the comments to the applicable Guidelines section and impose a concurrent sentence for what would have been a relatively small gain on Sommer's part. The undersigned does not believe the failure to make this argument constitutes an error "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 87. Nor do we believe counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522 (2003)(citation omitted). Sommer was not entitled to have her counsel raise every conceivable argument. *Engle*, 456 U.S. at 134. Sommer has failed to establish her counsel's performance was constitutionally deficient.

Even assuming counsel's failure to raise the § 5G1.3 issue was unreasonable, Sommer was not prejudiced by this omission. In the sentencing context, prejudice requires Sommer to show "a reasonable probability that his sentence would have been different but for the deficient performance." *Coleman v. United States*, 750 F.3d 734, 739 (8th Cir. 2014). "A reasonable

probability is a probability sufficient to undermine confidence in the outcome or a substantial, not just conceivable, likelihood of a different result." *Meza-Lopez v. United States*, 929 F.3d 1041, 1044-45 (8th Cir. 2019)(citation omitted). "The mere *possibility* that the court would have granted a concurrent sentence is too speculative to show the prejudice necessary to prove prejudice under *Strickland* (*i.e.,* that but for counsel's errors, the result of the proceedings probably would have been different)." *Mound v. United States*, No. 4:17-cv-04089, 2017 WL 6761927, *6 (D.S.D. Dec. 13, 2017), *report and recommendation adopted*, No. 4:17-cv-04089, 2018 WL 262830 (D.S.D. Jan. 2, 2018). Here, no more than a mere possibility exists. While the Court had discretion to run the sentences concurrently, the application note 4(C) to § 5G1.3 suggests such sentences should be consecutive. There is nothing to suggest that counsel's argument would have resulted in a different sentence being imposed. Sommer is not entitled to relief on this ground.

### III.   CONCLUSION

Based upon the foregoing, the undersigned hereby recommends that Sommer's motion to vacate filed pursuant to 28 U.S.C. § 2255 be DENIED and DISMISSED.

An appeal may not be taken in this matter unless the Court issues a certificate of appealability, which shall be issued only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §§ 2253(b) & (c)(2). A "substantial showing" is a showing that "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Based upon the above analysis of Sommer's § 2255 motion, the undersigned does not believe that there is any basis for the issuance of a certificate of appealability and, therefore,

14

recommends that a certificate of appealability be denied.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of June 2020.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE